Samuels, J.
The plaintiff seeks to reverse the judgment in this case for two reasons :
1st. Because the statute of June 7, 1852, Sess. Acts, p. 12, ^ 1, is not such as the general assembly might enact under the constitution of Virginia.
2d. Because, if the statute be constitutional, yet the action of the County court under it is not warranted by the law.
The power of the courts to decide against the va *579 lidity of a statute which is iu conflict with the constitution, is beyond question. The duty of the court so to decide, when a proper case is presented, is manifestly plain.
We are referred to the constitution, article 4, title “taxation and finance,” § 22, 25, with which, it is alleged, the statute under consideration is in conflict. It is said to be in violation of these provisions of the constitution in this, that it allows a rate of taxation which is not “ equal and uniform throughout the commonwealth ;” nor equal and uniform within any one county: That a subject, the office of sheriff, is taxed, the incumbent of which, being assessed with a tax on the fees or income of his office, is exempt from any further tax, a license tax, on the office itself: That the general assembly itself has no power to impose a tax such as this, and of consequence, could not delegate to the county courts the power to impose it.
It is necessary, to avoid confusion and its consequent error, to keep separate things which are essentially different; to distinguish between the revenue of the commonwealth at large, its modes of assessment and collection, and the revenues of the counties, (levies, poor rates and other charges,) and their modes of assessment and collection. As to the commonwealth’s revenue; the constitution, article 4, § 22, prescribes that “taxation shall be equal and uniform throughout the commonwealth, and all property other than slaves shall be taxed in proportion to its value, which shall be ascertained in such manner as may be prescribed by law.” This section manifestly relates to the commonwealth’s revenue, and to nothing else: Its place in the constitution and its language require that it should be so construed. That it does not apply to county charges is apparent from the fact that they are nowhere mentioned in the constitution. It is not proper to seize upon general words used with reference to *580 one subject, and apply them to a subject not in the the law giver when the words were used. judge, Case of the County levy, 5 Call 141. -yye cou]¿[ not g{ve yle construction contended for by applying this section to county charges, without imputing to the framers of the constitution either gross ignorance of the condition of the several counties of the state, or a willful disregard of justice. The framers of the constitution did know that there was a great difference in the amount of county charges in the several counties; they did know that, at different times in the same county, there was great inequality in the amount of those charges; yet to have prescribed a rate “ equal and uniform” for all counties, without regard to their wants, would have been highly unjust. Although the people of Virginia may be rightfully required to contribute to the expenses of their government in all its departments, yet if in some local departments their expenses be small, they cannot be required to pay large sums for the mere purpose of preserving an “ equal and uniform” rate of taxation. Thus I am of opinion that the rate of taxation prescribed by the twenty-second section is not necessarily to govern in levying to defray county charges.
For the same and other reasons, not yet expressed, I am of opinion that county levies and other charges are not affected by so much of the twenty-second section as requires taxes to be laid on all property, other than slaves, in proportion to its value; nor by so much of the twenty-third section as prescribes a tax on each slave over twelve years of age, equal to the tax on land, of the value of three hundred dollars. As already said, this part of the constitution, from its face and context, is intended to apply to the commonwealth at large, and not to counties or subdivisions. The co-temporary history of the adoption of the constitution leaves no doubt on the subject. These sections were *581 inserted to reconcile an alleged antagonism of interests between the western and eastern portions of the state. The western portion of the state had a large relative portion of the white population, and but a small relative portion of the slaves, within the commonwealth; the people of the western portion desired to make internal improvements which would require the expenditure of large revenues; and the people of the eastern portion of the state, who held much the largest proportion of the slaves, were apprehensive that the large revenues required might be levied by making a discrimination against property in slaves; and to obviate this apprehension, the rule of equality and uniformity was adopted and made part of the constitution. If we look to these sections standing alone, or in connection with the reasons for their adoption, it must be seen that they have no application whatever to county charges of any kind.
It is said, moreover, that the statute is in violation of the twenty-fifth section of the fourth article of the constitution, which provides that “ the general assembly may levy a tax on incomes, salaries and licenses; but no tax shall be levied on property from which any income so taxed is derived, or on the capital invested in the trade or business in respect to which the license so taxed is issued.” The same general answer may be given to this objection, that was given to that in regard to the rates and subjects of taxation; that is, that the section applies only to the commonwealth’s revenue and not to county levies. If it were otherwise, however, the plaintiff would find great difficulty in bringing himself within the terms of this section. It was intended thereby to protect any party from double taxation — once on his income, and again on the property yielding the income. Property, and income from the same property, cannot both be taxed at the same time; but unless we hold the office of *582 sheriff to be property, the case does not come within the twenty-fifth section. This office, or an office of any kind, is not embraced by any just definition of the wor¿ property.
it js alleged, moreover, that the general assembly itself has no power to impose a tax such as this, and that therefore it could not delegate it or confer it on the coifnty courts.
In ascertaining the extent of the legislative authority vested in the general assembly, it must be borne in mind that the federal constitution, within its limited scope, the bill of rights and the constitution of Virginia, prescribe its only limits. No suggestion has been made that either the federal constitution or the bill of rights is invaded by the statute under consideration ; they may therefore be dismissed from further investigation. The constitution of Virginia contains certain mandates and certain restrictions applicable to the departments of state government, legislative, executive and judiciary, respectively. It is a modification and arrangement of the sovereign power retained by the state, and a distribution thereof amongst the appropriate departments. The legislative department (now under consideration) is clothed with the power of making any law within the limits above stated. The constitution of Virginia requires certain laws to be enacted; it forbids the enactment of certain other laws. It is said that the statute before us is of the forbidden class; that levies for county charges come within the twenty-second and twenty-fifth sections of the fourth article of the constitution; that the rates and subjects by and from which state revenue is to be levied, are to be observed in county levies. The answer to this objection has been already given; it is that these sections were intended to apply only to the state revenue.
The constitution, article 6, § 28, directs that “ the *583 justices shall receive for their services in court a per diem compensation, to be ascertained by law, and paid out of the county treasury.” This is the only section having the slightest reference to the expenses within the counties. The organization of the county treasury and its mode of supply are in nowise provided for by the constitution. They were left to pass (with innumerable other subjects) under the control of the legislature. There they had been from a time anterior to the adoption of the first constitution, during all the time of the first and second constitutions, and there the third and last constitution still leaves them.
The power of the general assembly to confer authority on county courts, city councils, corporations and other organized bodies to impose local taxes for local purposes, had been exercised from the adoption of the first constitution down to the formation of the last. The rates and subjects of taxation were different in many instances, if not in all; the powers conferred were not always the same, but were varied to meet the exigencies of particular circumstances, and frequently were left to the discretion of the body on which they were conferred. All this was known to the convention; yet no explicit provision was inserted in the constitution changing this power of the general assembly. Surely if a change in the whole scheme of local taxation was intended, the convention would have expressed the intention in plain terms, and not have left us to arrive at it by a forced construction'.
The objection to this power of the general assembly has been passed on several times by this court; and the power under the first and second constitutions has been affirmed. In 5 Call 139, we find an opinion of Judge Pendleton in the Case of the County levy, said to have been pronounced in the Court of appeals. No statement of the case is given, but it may be gathered from the opinion that the validity of a county levy *584 assessed by the County court of Fairfax, was drawn in question, because the power of levying taxes could be exercised only by representatives chosen by the people, and could not be delegated to the County court; yet Judge Pendleton was of opinion the levy was well laid. From the fact that the county courts have continued from that time to this to exercise the power of laying levies, we may infer that the question was regarded as settled either by this case or otherwise.
In Goddin v. Crump, 8 Leigh 120, this court decided that the general assembly acted within its constitutional power, in conferring on the common council of the city of Richmond authority to levy taxes within the city to pay a subscription to the James river and Kanawha company.
In Harrison justices v. Holland, 3 Gratt. 247, it was decided that an act of assembly requiring a county court to lay a levy upon the tithables of the county, for the purpose of improving the navigation of a stream lying within it, though passed without the assent of the people, was constitutional.
In the case of Bull, &c. v. Accomack school commissioners, recently decided by this court, supra 78, it was held that a statute was constitutional, which conferred on certain commissioners for certain districts in Accomack the power of taxation for the purpose of establishing free schools.
I am of opinion that the power of local taxation for local purposes is in nowise varied or changed by the constitution of 1851; but that it remains the same as under the first and second constitutions : and that the objection on the first ground is not well taken.
It remains to consider the second error alleged as cause for reversing the judgment.
The plaintiff being the incumbent in office at the time the levy was assessed, and continually thereafter *585 until the time when the levy became payable, and even up to the time the judgment was rendered, it could make no difference to him whether the assessment was on him as sheriff, or on the office of sheriff; the result would be the same.
In ascertaining the comparative weight of the bur-1' den imposed by the court with that which the law authorized, two elements must be taken into the estimate, to wit, the amount of money, and the time of payment. It is perfectly obvious that a smaller sum to be paid promptly may be a more onerous charge, than a larger sum the payment of which is postponed to a remote time. If we may adopt this mode of making the estimate, it will be found that four hundred dollars assessed at October court, payable the first of February then next, is far less burdensome than eleven hundred dollars, payable at the end of the six months prescribed by the'general law of county levies, Code of Virginia, ch. 54, § 15, 16, or payable semiannually, as might have been directed under the statute of June 7, 1852.
If, however, it be conceded that the time fixed by the court for payment was less than that allowed by law, still the levy would not be thereby vitiated; but so much of it as was rightly done would be sustained, and so much of it as was wrongly done would be corrected, and made to conform to the general law contained in § 15, 16, above cited. In this view of the case the levy assessed at the October term 1852, on the fourth day of the month, was payable the 4th of April 1853. Nothing whatever was done to enforce payment until the 4th of April 1853, when an order was made requiring the sheriff to settle his account of the levies. At the May term it was ascertained that the sheriff refused to account for the levy assessed at the October term ; and thereupon the court ordered that the commonwealth’s attorney should take such *586 steps as might be necessary to enforce payment thereof. At the June term the judgment now before us was rendered on motion made after due notice under § 16, chap. 54, of the Code. Thus it appears that if the court erred in fixing the time of payment at the first of February 1853, yet it was corrected by the law and proceedings had under it, and that no injury has been done to the plaintiff.
I am of opinion to affirm the judgment.
The other judges concurred in the opinion of Samuels, J.
Judgment affirmed.