Staples, J.
It has been held by this court that the provision in the constitution of 1851, declaring that “taxation shall be equal and uniform throughout the commonwealth, and all property, other than slaves, shall be taxed in proportion to its value,” relates to taxation by the general assembly for purposes of state revenue; and does not apply to taxes and levies by *counties and corporations for local purposes. Gilkeson v. The Frederick Justices, 13 Gratt. 577.
The present constitution however includes counties and corporate bodies also; so that the prohibition, which was formerly confined to the state g-overnment, must now equally apply to corporate bodies; but in either case the prohibition relates to taxation for purposes of revenue, and not to those assessments made by municipal authorities, upon the owners of real estate within the corporate limits, for local improvements. These assessments are not founded upon any idea of revenue, but upon the theory of benefits conferred by such improvements upon the adjacent lots. It is regarded as a system of equivalents. It imposes the tax according- to the maxim, that he who receives the benefit ought to bear the burthen; and it aims to exact from the party assessed no more than his just share of that burthen according to an equitable rule of apportionment.
Whether these assessments are to be regarded as an exercise of the taxing power or the police power, or whether they are based exclusively upon the idea of compensation received in the form of benefits conferred upon the owner’s property, is a question not necessary now to be discussed or decided. It is sufficient to say, that the right to make such assessments, unless prohibited by some constitutional provision, is almost universally conceded. Concurring with Judge Anderson that the power unquestionably exists; that it is vested in the corporate authorities of Norfolk, I am led to a conclusion the very reverse of that which he reaches. His view seems to be, that as the owner of real estate in a city is liable to an assessment only by reason of benefits conferred, all levies in excess of such benefits are unconstitutional and void. But who is to "^determine whether such excess does in fact exist? What tribunal is to settle the question? Are the courts to take cognizance of such cases, enter into a critical examination of the assessments, strike a balance of benefit on one side and burden on the other, and sustain or annul as the one or the other may seem to prevail? In a large majority of such *85 cases, in the very nature of things, the courts cannot have before them the proper material for such investigations. I do not mean to say, that cases may not occur of such gross oppression and injustice as to require judicial interference: but they are exceptional, and must be decided as they arise upon the particular circumstances attending them, rather than upon any general rule or principle. My understanding has always been, that if the mode of assessment is regular and constitutional, if the power to levy the tax exists in that class of cases, the courts are not authorized to interfere merely because they may consider the taxation impolitic, or even unjust and oppressive. In such case the remedy is in the legislative and not in the judicial department. Cases, without number, might be cited in support of this principle. People v. Lawrence, 41 New York R. 137; Providence Bank v. Billings, 4 Peters' R. 514; Langhorne & Scott v. Robinson, 20 Gratt. 661; where the authorities are reviewed by Judge Joynes. In the case before us it appears that the city council of Norfolk, for the purpose of grading and paving its streets, has adopted the system of assessment by the front foot on lots adjacent to the street to he improved. The same system has been adopted in other towns and cities in the United States, and has been generally recognized by the courts as constitutional and valid. It is sustained by the highest courts in New York, Ohio, Michigan, Wisconsin, Missouri, California, Kansas, Connecticut and Pennsylvania. See Sedgwick on Stat. and Const. Baw 502-’3-’5; and cases cited in Cooley’s Const. Bimitation 507.
I admit there are some opposing cases; but neither in number, learning, or weight of authority, do they bear any comparison with the decisions which affirm the validity of this mode of assessment. Upon reason and principles of natural justice, it may be sustained as apportioning the burden according to the benefit, as nearly, perhaps, as any other that can he adopted. That it may in some instances operate harshly, and even oppressively, is conceded; but this is true of all forms of taxation.
It has been well said by a learned jurist, “taxation is sometimes regulated by one principle, sometimes by another; and very often it is apportioned without reference to locality, or to the tax payer’s ability to contribute, or to any proportion 'between the burden and the benefit.” The citizen who is required to pay a tax of one thousand dollars for the support of free .schools, to which he sends no children, while his neighbor, who has a half dozen to be educated, contributes nothing, may well complain of inequality of burdens. A county levy for the construction of a free bridge or other local work not unfrequently operates with peculiar hardship upon persons residing remote from the locality; and yet no one now questions the validity of such taxation. An ad valorem tax is regarded as the most just and equitable for the general purposes of government. The reason is, that a rich man derives more benefit from taxation in the protection of his property than a poor man, and ought therefore to pay more. The same rule, however, does not necessarily apply to local assessments. They are based upon the idea of benefits conferred by the work upon *the owners- of adjacent lots. If the owner of the unimproved lot pays only according to its value as ascertained at the time, his contribution is not in proportion to the benefits derived. The lot which is worth but little to day may, by the opening, grading and paving of the street adjacent, he enhanced in a few weeks in value to the amount of thousands of dollars.
We are, however, not called upon to decide which is the most just and equitable system of taxation, but whether the one tinder consideration is in conflict with the constitution or laws of the state. And in this connection I cannot do better than quote from the opinion of Judge Peck, of the Supreme Court of Ohio, in the case of Northern Ind. R. R. Co. v. Connelly, 10 Ohio R. N. S. 159. He thus states and answers the objection to this form of assessment: “But it is said, that assessments, as distinguished from general taxation, rest solely upon the idea of equivalents, a compensation proportioned to the special benefits derived from the improvement; and that in the case at bar the railroad company is not, and in the nature of things cannot be, in any degree benefited by the improvement. It is quite true that the right to impose such special taxes is based upon a presumed equivalent; but it by no means follows that there must he in fact such full equivalent in every instance, or that its absence will render the assessment invalid. The l'ttle of apportionment, whether by the front foot or a per centage upon the assessed valuation, must be uniform, affecting all the owners and all the property abutting on the street alike. It is manifest that the actual benefits resulting from the improvement may be as various almost as the number of owners and the uses to which the property may be applied. No general rule, therefore, could be laid down which' would do exact justice to *all. * * * * The mode adopted by the council becomes the statutory equivalent for the benefits conferred, although, in fact, the burden imposed may greatly preponderate. In such case, if no fraud intervene, and the assessment does not substantially exhaust the owner’s interest in the land, his remedy would seem to be to procure, by timely appeal to the city authorities, a reduction of the special assessment, and its imposition, in whole or in part, upon the public at large.” I refer also to the cases of People v. Mayor of Brooklyn, 4 New York R. 419; and People v. Lawrence, 41 New York R. 137; where the whole subject is exhaustively treated, and the law of local assessments placed upon impregnable grounds.
Upon my first examination of this record *86 I was inclined to think that the assessment here was upon the owners of the several lots for the expense of paving the street in front of each lot respectively. This upon well settled principles is illegal. A more careful examination has satisfied me, that the assessment is apportioned at uniform rates among all the owners of lots lying upon that particular street. It is one 'of the facts agreed, that the plaintiff has been assessed at the same rate per front foot, on his property, that all other owners of real estate on said street have been assessed on their property. In other words, the street to be improved is made a taxing district, and the expense of paving it is assessed upon the adjacent lots in proportion to the frontage of each upon said street.
Unless the expense of paving a street is very enormous, it is difficult to understand how a tax apportioned in this manner, can operate with very great hardship upon the owners of real estate abutting on the street. It appears also, that the pavement was directed by *a unanimous vote of the two councils in joint meeting, upon the petition of a majority of the owners of real estate fronting on the street. The city pays one-fourth, and the owners of adjacent lots pay three-fourths of the expense. They are permitted to make their payments in what is known as paving bonds, received at par and payable in annual instalments of five years. The very fact that this improvement is made at the instance of a majority of those upon whom the burden falls, and that among all the members of the' city councils not a vote is recorded against it, is very persuasive evidence, at least to my mind, there is no great hardship in the assessment, nor injustice in the system under which it was made. If either exists, • if there are individual cases of wrong, the remedy is by a timely appeal to the city authorities; or to the legislature for an amendment of the charter. The courts cannot interfere except by an assumption of power not properly belonging to the Judicial Department.
These are my views, the results of a careful examination of the authorities, and such reflection as I could give the subject. The question is an important one, and I regret extremely that my other duties have prevented the preparation of a more elaborate opinion. Ror the reasons stated I think the judgment of the corporation court erroneous, and should be reversed.
Anderson, J. Upon petition of a majority of the owners of lots fronting on Wood street, in the city of Norfolk, the city council ordered it to be paved, and that one-fourth of the expense should be paid out of the public treasury, and three-fourths be assessed on the lots fronting on the street. The defendant in *error being owner of one of the lots was assessed with $874.11, which he paid under protest, and then brought suit in the Corporation court of said city to reclaim it, and obtained judgment. And the case is brought here by the city of Norfolk upon a writ of error. The main questions are, “Have the city council authority to make assessments upon the owners of real estate, especially benefited, to pay the expense of the improvement, or any part of it? And is the per front foot apportionment lawful?”
I am not aware that these questions have ever been decided in Virginia. But numerous cases have been cited from other states, in which the power to make such local assessments has been maintained, though upon different grounds. In some of them the power has been derived from the right of eminent domain; in others from the taxing power. I think it is clear that the power cannot be derived from the former source. Government cannot take private property in the right of eminent domain, except by giving to the owner a just compensation therefor. And it has been held, and I think rightly, that money is not subject to the right of eminent domain. Why should the government take the citizen’s money, to return it to him as soon as taken? The power cannot be derived from that source.
Is it taxation? If it is, it is prohibited by the constitution of this state. Section 1, article 10, provides “That taxation, except as hereinafter provided, whether imposed by the state, counties, or corporate bodies, shall be equal and uniform, and all property shall be taxed in proportion to its value, to be ascertained as prescribed by law. ’ ’ To raise revenue, it is required that all property shall be taxed, and it must be taxed in proportion to its value. *But it is contended that although it is taxation, it does not fall within this constitutional limitation, because though it is a tax, it is not a tax on property but on benefits. But it seems to me that is untenable. If it is a tax at all, and is not a tax on property, it would be difficult to perceive what is a tax on property. It is an assessment upon the land of the defendant in error to pay for the improvement of public property, the paving of a public street, which incidentally enhances the value of his property. It cannot be said that it is not a tax on property, but on benefits, because it incidentally enhances the value of the property taxed. All taxation is for the benefit of the body politic; and the well being and benefit of the body politic benefits all its members. Therefore it may be said, that all taxation is incidentally for the benefit of the taxpayers, and may as logically be said to be a tax on benefits.
In other cases cited, it is said that whilst it is an exercise of the taxing power, it is not exerted for the purposes upon which the constitutional limitation was designed to operate. And in support of this position, Gilkeson v. Rrederick Justices, 13 Gratt. 577, is relied on. In that case, art. 4, l 22, of the constitution of 1851, that “taxation shall be equal and uniform throughout the commonwealth, and all property, other than slaves, shall be taxed in proportion to its value,” &c., was construed to apply “to the commonwealth’s revenue, and to nothing else. ’ ’ This construction was put upon the *87 ground, that County courts, city councils, &c., had always exercised the power of local taxation for local purposes, and upon different rates and upon different subjects, and-they were not expressly embraced in the ■constitutional limitation. Judge Samuels, speaking for the whole court, says (p. 583) “the power of the general *assembly to confer authority on County courts, city councils, corporations, and other organized bodies, to impose local taxes for local purposes, had been exercised from the adoption of the first constitution down to the formation of the last. The rates and subjects of taxation were different in many instances, if not in all; the powers conferred were not always the same, but were varied to meet the exigencies -of particular circumstances, and frequently were left to the discretion of the body on which they were conferred. All this was known to the convention, yet no explicit provision was inserted in the constitution changing this power of the general assembly. Surely if a change in the whole scheme of taxation was intended, the convention would have expressed the intention in plain terms, and not have left us to arrive at it by forced construction.” In the present constitution it is expressed in plain terms; and perhaps with reference to the above decision. Counties and corporations are expressly embraced within the limitation. And as the public streets are a subject of municipal regulation, and the putting them in good condition, and keeping them in repair, and paving them when necessary, and the raising money for such purposes, are as much a public duty and necessity, as to raise money for any other branch of municipal administration, taxation for such purpose necessarily falls within the aforesaid constitutional limitation; and this reasoning is consistent with the principles ■enunciated in Gilkeson v. Frederick Justices, ■supra. The case of Eanghorne & Scott v. Robinson, 20 Gratt. 661, is under the constitution of 1830, which contained no restriction on ttve taxing pcmei, and consequently has no application to this case.
If therefore it is a tax I can see no reason why it is not included in the general terms “taxation” and *'“tax” as employed in the constitution. If it is taxation, or an exercise of the taxing power it seems to me, that it plainly falls within the letter of the constitutional limitation; and within its spirit too. For I can see no reason why the legislature and municipal corporations should be limited in laying a tax for general purposes to uniformity and equality amongst those who are assessed with the tax, and should not be so restricted in laying a tax for local purposes. Equality in the one case is as essential to justice as in'the other. Unless then we can find some other ground upon which the ■assessment is warranted it seems to me, that it is plainly prohibited by the clause ■in our constitution referred to above. If it is taxation, it is prohibited upon the ground that it is not equal and uniform; and further, upon the ground that it is a tax on property, and is not apportioned according to the value of the property.
But I am inclined to the opinion, that it is not properly a tax; and that it is erroneously ranged under the taxing power, in the cases cited by the plaintiff’s counsel. Whilst we have great respect for the judicial decisions of our sister states, and for the opinions of the able text writers, who seem to follow them, they are not binding authority upon this court: and I am the less reluctant to dissent from them upon this question, inasmuch as the decisions of other courts, equally entitled to our respect, hold that it is not an exercise of the taxing power. The question is one of first impression in this state; and not being trammeled by authority I feel free to consider it upon what I consider sound principles of law, and reason.
It is an assessment. But the word assessment does not always mean a tax. A jury of inquest, upon a writ of ad quod damnum, is directed to assess the damage *to the owner of the lands through which the road passes, or which shall be condemned for the abutment of a mill dam, and the like. And a jury is required to assess the damage, to which the plaintiff in an action at law is entitled, in the execution of a writ of inquiry. And by section 67 of this same charter, the city councils are required to assess, and pay to any one whose house has been destroyed by the city authorities to arrest the progress of a fire, the damage he has sustained. In these cases assessment does not mean a tax. And so it may not in the provision of the charter now under consideration. It is evidently a mode of raising money to defray the expense of improving the streets, which is different from the mode of raising it by taxation. The charter empowers the councils to determine what proportion of the expense of the improvement shall be paid out of the public treasury, and what proportion shall be paid by the owners of real estate who are bene^ted. For the former the money is raised by taxation; for the latter it is raised by an assessment on the owners of the real estate which is specially benefited.
In the class of cases now under consideration, the improvement is chiefly for the benefit of the ownefs of the real estate which is adjacent to the street which is paved. And the design is, that they shall pay a proportion of the expense of the improvement beyond their contribution in common with other citizens, by taxation, according to the special benefits they receive. And the city having paid the whole cost by its bonds, the city councils are authorized to assess—that is, to ascertain and determine—what proportion of the cost paid by the city was for the owners of the real estate thus exceptionally benefited; a bill or an account of which is to be stated by the commissioner of the revenue, *and placed in the hands of the city collector. And to enforce the payment he is required to collect it as city *88 taxes are collected. This very language implies, that these assessments were not regarded as taxes. The city having paid part of the cost of a street improvement, which certain owners of real estate ought to have paid, it being to that extent for their peculiar benefit, in order to have it refunded to the city, the councils are authorized to assess each one with his fair proportion—that is, to ascertain and determine what he shall pay—which I think is made a charge upon his estate, real and personal, by the provision that it shall be collected as city taxes.
It seems to me, that these local assessments fall neither under the head of the taxing power nor the power of eminent domain. It is a distinct power vested in the councils by the charter, to enable them to perform their important function of providing- suitable streets and highways for the city, to determine what proportion of the cost, if any, shall be paid by the city, and what portion the parties benefited shall pay. The portion of the expense which the city shall pay they may raise by taxation, it being for a corporate purpose; the part which the owners of real estate benefited should pay, being for individual benefit, and therefore wanting in an essential element of taxation, which must be for a public purpose, the charter impliedly authorizes the councils to apportion it amongst them, and to assess the amount against each of them, as a jury would assess damages. Independently of the power thus conferred upon the councils by the charter, they could not make the requisition upon the parties benefited. They could not do it under the taxing power, because the constitution requires a tax on property to be apportioned according to the value of *property, real and personal. If this power was not specially given, all that the councils could do', if they were petitioned to have a street paved, and did not regard it of such public interest as to justify its being done wholly at the public charge, would be to agree that they would pay out of the public treasury, one-half, one-third, or one-fourth, or other proportion of the expenses as they might consider the public interest in the work would justify, provided the balance should be raised by the parties to be benefited. Such it is believed, has been the common usage in the administration of county affairs. The inhabitants of a section of a county, are desirous of having a bridge over a stream. It is a work in which they are peculiarly interested. And whilst it will be of general advantage to the county, the justices do not regard it as of such general advantage as to justify its construction wholly at county expense; and they propose to order it, and to pay a part of the cost, provided the balance is raised by private contribution. And in order to have the bridge those who are interested must raise the balance. And so, whilst the paving of a street may be of public benefit to a city, the council may consider that it will not be of such benefit as to justify an outlay to have it done at the public expense in the whole, or in some cases, even in part. If then it is done, it must be entirely by private contribution in the one case, or partly in the other.
These contributions must be either voluntary or compulsory. If the former, the misfortune is that all will not contribute in proportion to the benefits they will receive from the improvement. The more liberal and public spirited will contribute more than their just proportion; some will barely do their part, and others will do little or nothing, willing to share in the benefits, *but not in the burden. The inhabitants of Norfolk in providing a government for their city, provided in their charter that contribution in such case should be compulsory, and that the amount which those benefited ought to pay should not be left to their own biased judgment, but should be determined by the city councils, not arbitrarily, but according to benefits received. And the ground of compulsory contribution is, that it is a public improvement which enhances the value of their real estate in a way that it does not the real estate in the city generally, and benefits them especially as it does not the citizens in general, and that it is just and proper that they should be required to contribute specially to the cost of making it. The authority given by the charter to make these assessments is founded in this (under proper restrictions) just principle, and I do not regard it as falling strictly or appropriately under the head of the taxing power. But it is a distinct power vested by the charter in the councils, with the assent of the corporators, to ascertain and determine upon a question of quid pro quo what a member of the corporation should pay to it for the special benefits he receives from the improvement. If it be said he did not ask for it, that the work was not done at his instance and request, it might be answered, that he, being a member of the corporation consented, (for his consent to the charter must be presumed,) that the councils might, under certain prescribed conditions, decide for him whether the work should be undertaken and assess him with sttch portion of the expense as ought to devolve on him in proportion to the special benefits which he derives from the improvement. Their decision that the improvement is i a work of public convenience or necessity, and that it shall be made, supersedes *the necessity of a special request from him. It being a public work which must be paid for by the citizens, it is not right that those who derive special and extraordinary benefits from it should pay no more than the citizens generally. Therefore the principle of the charter, which authorizes an assessment on the owners of real estate who are specially benefited by the improvement, to pay a part of the expense of the work, in proportion to the special benefits which they derive from it, over and above what they receive in common with the other citizens, it seems to me, is *89 founded in reason and justice, and a sound public policy. The power can only be exercised on this principle, or on the principle of taxation. If on the former, it is on the principle of a return for benefits received: If on the latter, it is on the principle the right of sovereignty to command. But we have seen that this right to command, this power of taxation, is limited by the constitution: That taxation must be equal and uniform, and that all property, real and personal, shall be taxed in proportion to its value, whether levied by the sovereign legislative power of the commonwealth or by municipalities. And if these assessments can only be supported as a tax, or under the taxing power, I could not consistently with my obligations to the constitution, sustain them. A plain mandate of the constitution ought not to be evaded by ingenious construction.
But the assessments being warranted, upon the other principle, the councils are clearly not authorized to make an arbitrary assessment—that would be despotism; nor an assessment in proportion to the value of the property owned by the parties assessed; or of their ability to pay; or of the value of their lots fronting on the street; or the size of them; or their *'per front foot. But these matters may all be considered, as well as the condition and situation of the lots, and the use to which they are or may be applied, and any other circumstance which may have any bearing upon the question of proportion of benefits received. Upon this principle in no case could the owner of a lot be assessed with a sum which would necessitate a sale of his lot for less than the amount of his assessment. Ror if he is benefited it must be by the enhanced value given to his real estate; and I cannot see how he would be benefited by the improvement if he was thereby forced to sell his real estate to pay it at a price not exceeding the amount of his assessment. It is in fact a judicial inquiry, and should be proceeded with as such.
■ It is contended that the councils in making the assessment exercise their legislative function. That I apprehend is a great mistake. The councils are invested with both legislative and judicial functions, as will be readily seen by inspecting the charter. This is a judicial function. The determination of what constitutes a benefit, and its valuation, says Mr. Sedgwick, are judicial acts, which do not pertain to the legislative function. Sedgw. on Const. Daw, pp. 169, 174-’5, 177. In State v. Collector of Newark, 1 Ducher’s R. 315, it was held that these local assessments were of a judicial character, and that the power of the court to review them was too well settled to be questioned. In The People v. The Mayor &c., of New York, 5 Barb. R. 43, it was held that it was competent for the Supreme court to vacate the estimate and assessment of the common council for the construction of a sewer, as the common council then acts in a judicial capacity. In Parks v. The Mayor &c. of Boston, 8 Pick. R. 218, it was held that the power vested in the mayor *and aldermen of Boston, as to the laying out and altering of streets, is judicial, and a certiorari lies in such case. But it is unnecessary multipy citations of authority further, in support of this proposition. It seems to be very clear both upon reason and authority, that the function is judicial and not legislative.
In my opinion it would be competent for the councils, and it would be the right way, to summon the parties sought to be assessed before them, to show cause against it, who should be allowed to be heard, and to adduce evidence upon the question: or the councils might make the inquiry through a commission, as is required by the statute of New Jersey, who upon an actual view, and upon such evidence as either party might adduce, should make their report to the councils for confirmation; and in either case the party should have notice. It has. been held in New York and New Jersey that notice is necessary, although not expressly required by the statute.
But it is contended, that an apportionment according to the front foot extent of the lots along the street paved may be adopted as a safe and uniform rule for a just apportionment of the expenses according to the benefits received. It is possible that there might be a case in which it would so operate. But if so it would be an exception to the general rule. In New Jersey and the great State of Illinois, where they have immensely wealthy and populous cities, their experience seem to be different. In State v. Hudson City, 5 Dutch. R. 116, 117, it was. held that an impost according to extent of front, absolutely excludes the idea of an assessment in the ratio of benefits. See also City of Chicago v. Darned, 34 lili. R. Whether it is true to that extent or not, T think that enough may be seen in this brief record of the operation of the rule in this case, to *show that the reverse of the proposition contended for is true. It shows that in the assessments made by the councils, under the operation of that rule adopted in this case, the owner of a lot valued at $150, before the improvement of the street, was assessed with $1,000 as his. share of the expense of the improvement. A rule which produces a result so shocking to our every sense of justice cannot have the merit which is claimed for it, and cannot be relied on as the best practicable rule to make an apportionment among the owners of the lots benefited according to the benefits they receive from the improvement. But it is attempted, by the advocates of the rule, to parry the effect of this damaging fact, by alleging that the party thus demnified had not then applied to the councils for relief. He may be awaiting the decision of this cause, which seems to be treated as a test case. Whilst I would not regard the value of the real estate benefited as the rule upon which the assessments should be made, I would regard it as having an important *90 bearing, with other circumstances, in making a just apportionment of the benefits received; which we have seen is the only principle upon which the assessment can be made. The owner of a lot handsomely improved, with a costly residence upon it, would be greatly more interested in having a well-paved street than the owner of an unimproved lot; but upon the basis of apportionment per the front foot the owner of ■the unimproved lot having double the front, ■although the area was no greater, would be required to contribute twice as much to the pavement of the street. And between lots unimproved there might be a great difference in the benefits which they receive from the improvement on account of situation and other circumstances, although they were equal in the front foot. And *yet the owners on this basis are required -to pay the same. Their benefits are not ■equal. ‘ One may own a lot on which he has a costly hotel, and the pavement of the street may add 50 per cent, to its value by in•creasing his custom; but he is required to pay no more than the owner of an unimproved lot which is not a tenth of its value ■and from which he derives no income. Do -they derive equal benefits from the improvement? A man of plain common sense would •answer no. The same may be said with regard to the owner of a lot upon which there are valuable stores or machine shops. Is it not manifest that he derives much greater benefits from the improvement than the owner of an unimproved lot, or of one the improvements on which are of inconsiderable value, though of equal front, and from which he derives little or no income.
It is not without doubt and difficulty I bave reached the conclusion that, under the ■constitution of Virginia this power of local assessment can be maintained at all. I am clear that it cannot be maintained under the taxing power. And that if it can be maintained at all it is by virtue of the judicial power vested in the councils by the charter, to assess the owners of real estate with a just proportion of the expense, according to the special benefits which they respectively derive from the improvement. I cannot conceive of any other principle upon which they could justly or lawfully be required to pay for a public work beyond their just liability, in common with other citizens, to taxation for public objects. The improved street is not theirs: It is public property. They have no right to use it that does not equally pertain to every other citizen. And it is urged with much force of reason, that it ought to be made at the cost of the city by a ‘^constitutional tax upon all the citizens. The only ground upon which they can be required to pay beyond their common liability with all other citizens, is, that the improvement is a benefit to them in a way that it is not to the citizens in common. And it is only to the extent of those benefits, and in proportion to the value of those .they respectively receive, that they can be held liable. And this is a judicial question, which ought not to be determined against them without notice and an opportunity to be heard. And in no case can they be assessed beyond the value of the benefits which they specially receive from the improvement.
But it is said that it is a power which the legislature could not exercise and therefore could not delegate. It is true that it is a power which the legislature could not exercise. And it is true, that the legislature cannot delegate a legislative power with which it is not itself invested. But I apprehend it is not true as to judicial power. The legislature can surely invest another tribunal with judicial power which it cannot exercise itself. And therefore it is only upon the ground that it is a judicial power vested in the councils by the consent of the corporations, that it can be maintained, and in my opinion, can only be maintained under the restrictions and qualifications which I have endeavored to explain.
It does not appear from the record, that these restrictions were observed by the councils in this case. It appears to be an arbitrary assessment per the front foot of the lots, and not, nor professed to be, in proportion to the benefits which the owners of the real estate derived from the improvement. The councils have not therefore confined themselves within the limits of their authority; and the asessment is void. *In this conclusion I am fortified by the recent decisions of the Supreme court of Illinois; in one of which the great city of Chicago was a party; by repeated decisions of the Supreme court of New Jersey, and other cases. I am of opinion for the foregoing reasons, that the assessment in this case being without authority, is null and void, though it is competent for the councils to make another assessment upon the principles indicated in this opinion. I am therefore for affirming the judgment of the Corporation court.
Moncure P. and Christian J. concurred in the opinion of Staples J.
Bouldin J. concurred in the results of the opinion of Anderson J., but not in all his views.
Judgment reversed.

Local Assessments.—See Sands v. City of Richmond, 31 Gratt. 571, and note, and Violett v. Alexandria, 92 Va. 561, where the subject of local assessments Is discussed in all Its aspects and all the Virginia cases on the subject are thoroughly reviewed.