## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉,

### MOSS V. COUNTY OF TAZEWELL.

November 29, 1911.

1. CONSTITUTIONAL LAW—*Statutes—Doubts as to Validity.*—The power of the legislature to enact laws is supreme, except so far as it is restrained by the State or Federal Constitution, and even in case of doubt as to the power, all doubts are to be resolved in favor of the existence of the power. Courts have no power to declare an act unconstitutional, unless it is so clearly and plainly so that there can be no doubt on the subject.

2. CONSTITUTIONAL LAW—*Uniform Taxation—County Road Bonds—Acts, 1908, p. 71.*—The act of February 25, 1908, "to provide for the issuing of county bonds for permanent road or bridge improvement in the magisterial districts of the counties of the State," authorizing the counties to levy a tax on all property liable to State taxes in the magisterial districts in which the proceeds of the bonds of the county have been or are to be expended, in order to pay interest and create a sinking fund to redeem the principal at maturity, does not contravene section 168 of the Constitution which declares that "all taxes, whether State, local or municipal, *shall be uniform* on the same class of subjects within the territorial limits of the authority levying the tax and shall be levied and collected under general laws." There is uniformity not only in the rate of taxation and in the mode of assessment, but this uniformity is also coextensive with the territory to which it applies, and this is all that is required.

3. COUNTY ROAD BONDS—*Primary Liability of County—Acts, 1908, p. 71.*—The "county bonds" authorized by the act of Assembly mentioned in the preceding paragraph are direct county bonds for which the county is primarily responsible as.appears from the language of the act which, amongst other things, declares that there shall be written or printed in said bonds the following sentences: "These bonds are issued for ——— magisterial district, but the full faith and credit of the entire county is hereby pledged for their payment; and a tax to be levied upon the property of said district to pay the interest on them and

to create a sinking fund sufficient in amount to pay them upon maturity." The liability of the county, so far as the holder of the bonds is concerned, is in no way diminished by the circumstance that, as between the county and the magisterial district a convenient and expeditious method is provided for the payment of the interest and principal of the bond by levy of a sufficient tax upon the property in the district for that purpose. Counties are organized under the Constitution and laws of the State, and, within their territorial limits, possess many important governmental and other functions. They may make contracts with respect to which they may sue and be sued, and possess adequate agencies and machinery to discharge the duties and obligations imposed upon them by law. But magisterial districts are subordinate divisions or precincts of a county, created for political and administrative purposes of exceedingly limited character, and possess no debt-making power either under the general statutes of the State or the act of Assembly aforesaid.

Error to a judgment of the Circuit Court of Tazewell county in a proceeding by motion for a judgment for money. Judgment for the plaintiff. Defendant assigns error.

The opinion states the case.

*Affirmed.*

*Henry & Graham,* for the plaintiff in error.

*Geo. W. St. Clair* and *T. C. Bowen,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

This writ of error is to a judgment rendered upon motion by the circuit court in behalf of the defendant in error, the plaintiff below, against the plaintiff in error, C. J. Moss, for the purchase price of three bonds (known as "road bonds") each of the denomination of $1,000.

These bonds constitute part of a bond issue made by Tazewell county by virtue of an act of the General Assembly of

Virginia, entitled "An act to provide for the issuing of county bonds for permanent road or bridge improvement in the magisterial districts of the counties of the State," approved February 25, 1908.    3 Va. Code Supplement, 1910 (Pollard), p. 729.

In pursuance of this act an election was held in Tazewell county to take the sense of the qualified voters of the several magisterial districts of the county and of the qualified voters of the county, whether the board of supervisors should issue county bonds aggregating $625,000 for the entire county, the proceeds of which were to be apportioned among the several magisterial districts in accordance with the provisions of the act.    The election was duly held and resulted favorably to the bond issue.

We have scrutinized the proceedings leading up to and including the authorization, execution, issuance and sale of these bonds, and, without undertaking to set out in detail the various steps taken, it is sufficient to say that the county authorities have substantially complied with all the requirements of the act.

There are only two assignments of error which demand our attention.    The first is "That the statute under which the election was held and the bonds issued is unconstitutional"; and, second, "That the bonds are not direct county bonds for which the county is primarily responsible, but are direct magisterial district bonds, these districts being primarily liable."

With respect to the first assignment, it is maintained that the act is in conflict with that portion of section 168 of the Constitution of Virginia which declares that, " . . . all taxes, whether State, local, or municipal, shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

Objection to the constitutionality of this act has recently

received careful consideration at our hands. In May last a petition for appeal from a decree of the Circuit Court of Lee county, in the case of *Holliday, for &c., v. Board of Supervisors,* involving the precise question now in judgment, was refused by four of the judges in vacation, and afterwards by the court, on the ground that the decree of the circuit court, maintaining the constitutionality of the act, was plainly right. In these circumstances, we would ordinarily have simply denied a writ of error in the present case; but in view of the large number of bond issues under this act throughout the State, we have deemed it advisable to affirm its constitutionality by an authoritative decision.

The principle is elementary that "The power of the legislature of the State is supreme, except so far as it is restrained by the State or Federal Constitution, and even in case of doubt as to the power, all doubts are to be resolved in favor of the existence of the power. The courts have no power to declare an act unconstitutional, unless it is so clearly and plainly so that there can be no doubt on the subject." *Henry's case,* 110 Va. 789, 65 S. E. 57, 26 L. R. A. (N. S.) 883; *Button* v. *State Corporation Commission,* 105 Va. 634, 64 S. E. 769, and cases cited.

This canon of construction is essential to the very life of the State and has always been jealously guarded by the courts. In deference to this fundamental principle, the constitutionality of acts of the legislature essentially similar to the present statute have repeatedly received the sanction of this court.

In *Gilkerson* v. *Frederick Justices,* 13 Gratt. 577, it was held that section 22, Art. IV of the Constitution of 1851, providing that "taxation shall be equal and uniform throughout the Commonwealth, and all property . . . shall be taxed in proportion to its value," applied to State revenue and not to taxes and levies by counties for local purposes.

111

The Convention which adopted the Constitution of 1869, in section 1, Art. X, enlarged the scope of the equality and uniformity provision so as to include taxes imposed for State revenue and also levies imposed by counties and corporate bodies for local revenue.    Nevertheless, in *Norfolk City* v. *Ellis*, 26 Gratt. 224 (a decision under the Constitution of 1869), the court held that the council of Norfolk had authority under the city charter and the Constitution of the State to assess the expense, in whole or in part, of paving a street upon the owners of the property on the street in proportion to the number of feet facing on the street.    The court construed the constitutional prohibition as applying to revenue as contra-distinguished from assessments for local improvements.    Such assessments, it was said, proceeded upon the theory of benefits conferred upon the inhabitants of the particular locality, and not upon the idea of revenue.    Judge Staples, in delivering the opinion of the court in that case observes: "It is regarded as a system of equivalents.    It imposes the tax according to the maxim, that he who receives the benefit ought to bear the burden; and it aims to exact from the party assessed no more than his just share of that burden according to an equitable rule of apportionment."

In *R. & A. R. R. Co.* v. *City of Lynchburg*, 81 Va. 473, the charter of Lynchburg, which empowered the city, where water mains were laid in the street, to levy an annual special assessment on the real estate on both sides of the street to meet the expense of the water-works, was held to be valid.

In *Supervisors* v. *Saltville Land Company*, 99 Va. 640, 39 S. E. 704, the court held: "In the absence of constitutional restrictions, the legislature may impose upon a taxing district, such as a town, the duty of keeping in repair the streets and roads within, and relieve it from taxation for

roads without, its limits.    The legislature judges finally and conclusively upon this question."

In *Day* v. *Roberts*, 101 Va. 248, 251, 43 S. E. 362, 363, Buchanan, J., speaking for the court, said: "Constitutional provisions similar to the one now under consideration (section 1, Art. X, Constitution of 1869,) have frequently been before the courts.    The settled construction placed upon them is that uniform taxation requires uniformity, not only in the rate of taxation, and in the mode of assessment upon the taxable valuation, but the uniformity must be coextensive with the territory to which it applies.    If a tax is imposed by the State, it must be uniform over the whole State; if by a county, city, town, or other subordinate district, the tax must be uniform throughout the territory to which it is applicable.    *Knowlton* v. *Board of Sup.*, 9 Wis. 410, 420-1; *Bright.* v. *McCullough*, 27 Ind. 223, 230; *Exchange Bank* v. *Hines*, 3 Ohio St. 15; *Sleight* v. *People*, 74 Ill. 47; *Dyar* v. *Farrington*, 70 Maine 515; *Hutchinson* v. *Osark Co.*, 57 Ark. 554, 22 S. W. 173, 38 Am. St. Rep. 258; *Pine Grove, &c.*, v. *Talcott*, 19 Wall. 676, 22 L. Ed. 227; Cooley on Tax. (2nd ed.), 244, 141; Cooley's Const. Lim. (6th ed.), 610; 1 Desty on Tax., sec. 35, p. 173; Burroughs on Taxation, 61, 62."

The uniformity clauses of the Constitution of 1869 and of 1902 are substantially the same, and the authorities to which attention has been called fully sustain the constitutionality of the act of February 25, 1908.

We are furthermore of opinion that the assignment of error, that these bonds are not direct county bonds for which the county is primarily responsible, but are direct magisterial district bonds for which the districts are primarily liable, is not meritorious.

Counties are erected by the legislature, and constitute subdivisions of the State.    They are organized under the Constitution and laws, and, within their territorial limits, are clothed with many important governmental and other

functions. Among others, they have authority to make levies for local purposes. They also have power to make contracts, with respect to which they may sue and be sued as provided by law, and possess adequate agencies and machinery to discharge the duties and obligations imposed upon them by law. But it is otherwise with respect to magisterial districts, which are subordinate divisions or precincts of a county, created for political and administrative purposes of exceedingly limited character. They are without that artificial personality possessed by corporate bodies. They have authority to elect certain officers, but possess no debt-making power under general statutes of the State, and plainly have no such power under the act of February 25, 1908. It is not possible, therefore, that these road bonds are direct magisterial district bonds.

On the other hand, that the bonds are direct county bonds, for payment of which the full faith and credit of the entire county is pledged, unmistakably appears from the terms of the act.

Section 1 declares, "That bonds may be issued by any county" for the purpose, and upon the conditions, and in the manner therein provided.

Section 2 provides, that the polls shall be opened at all the voting places in the county, not in a particular magisterial district, and that all the qualified voters of the county shall have the right to vote on the question of bond issue.

Section 3 provides, that the commissioners of election of the county shall canvass the returns.

Section 4 provides, that if the report of the commissioners of election shows that a majority of the qualified voters of the county voting upon the question, and also that a majority of the qualified voters of the district voting on the question, are in favor of issuing the bonds, the circuit court shall direct the board of supervisors of the county to carry out their wishes.

Section 5 provides for contesting such elections.

Section 6 provides, that the board of supervisors shall issue the bonds, which shall be signed by the chairman and countersigned by the clerk of the board, "and shall have written or printed in said bonds the following sentences: 'These bonds are issued for..........Magisterial District, but the full faith and credit of the entire county is hereby pledged for their payment; and a tax to be levied upon the property of said district to pay the interest on them and to create a sinking fund sufficient in amount to pay them upon maturity.' "

Section 7 provides, that a levy shall be made by the county on all property liable to State tax in such magisterial district in which the proceeds of the bonds have been or are to be expended to pay interest and create a sinking fund to redeem the principal at maturity. It also provides, that "Should for any reason the county in any way have to assume any payment on account of said bond issue, either interest or principal, it is hereby provided that the board of supervisors shall levy such tax in said magisterial district as may be necessary to defray the amount assumed by the county, it being and having heretofore been intended that bonds issued or to be issued under this act are county obligations, but payable primarily out of levies upon the property in the magisterial district where the proceeds of the bonds may be expended hereunder."

It thus appears that these bonds are direct county bonds for the payment of which "the full faith and credit of the entire county is . . . pledged;" and the liability of the county, so far as the holder of the bonds is concerned, is in no way diminished by the circumstances that as between the county and the magisterial district a convenient and expeditious method is provided for payment of the interest and principal of the bond by levy of a sufficient tax upon the property in the district for that purpose.

In conclusion, we are of opinion that the act in question is constitutional; that the bonds are direct county bonds for which Tazewell county is primarily liable to the holders; and that the proceedings by which this bond issue was authorized and the bonds executed were in all respects regular and lawful.

For these reasons, the judgment of the circuit court must be affirmed.

*Affirmed.*