# Richmond.

## E. L. KIRKPATRICK, ET ALS V. BOARD OF SUPERVISORS OF ARLINGTON COUNTY, VIRGINIA, ET ALS.

### November 26, 1926.

1. MUNICIPAL SECURITIES—*Bond Issue—Acts of 1922, Chapter 260, and Acts of 1926, Chapter 284, as Applied to Arlington County—Validity of Bond Issue Under Acts of 1926, Chapter 284—Case at Bar.*—In the instant case, complainants, taxpayers in Arlington county, sought to enjoin the board of supervisors from issuing bonds under an election held under the act of 1926, chapter 284, for the installation of a publicly owned water system. They contended that all of the steps taken in calling and holding the election and attempting to issue any bonds under authority of Acts of 1926, chapter 284, were void because the act of 1926 was a general law and not applicable to Arlington county as a prior special act (Acts of 1922, ch. 260), covering the same matter, was in force in the county. The two acts had the same object, in part, but provided entirely different methods of attaining that object.

   *Held:* That it was manifest that the legislature intended that both acts should be in force in the county, giving the county a choice of means to attain the end sought.

2. MUNICIPAL SECURITIES—*Water Supply—Acts of 1922, Chapter 260, and Acts of 1926, Chapter 284.*—Both the Acts of 1922, chapter 260, and the Acts of 1926, chapter 284, grew out of the same necessity,. an adequate water supply, and when this need is fully supplied under either act it precludes the possibility of the other act ever being called into use.

3. MUNICIPAL SECURITIES—*Arlington County Water Supply—Acts of 1926, Chapter 284, Applies only to Arlington County.*—Acts of 1926, chapter 284, authorizing counties having a population of more than three hundred inhabitants per square mile to install a publicly owned water supply system or systems, is general and applies not only to Arlington county but to every other county which is or may come within its terms. But the primary reason for its passage was to supply the needs of Arlington county. There are a number of reasons which indicate this intention and show definitely and conclusively that Arlington county was intended to be included in the provisions of the act of 1926, chapter 284, as under the present state of the law,

and in view of the physical location of the counties of the State and their population, it could not apply to any other county.

4. STATUTES—*Construction—Statutes to be Harmonized.*—Where two statutes are in apparent conflict they should be so construed, if reasonably possible, so as to allow both to stand and to give force and effect to each.

5. STATUTES—*Intention Governs.*—The object of all interpretation and construction of statutes is to ascertain and carry out the intention of the law-makers, and when the intention is ascertained it must always govern.

6. STATUTES—*Special Acts—Special Act to be Construed as Exception to General Law—Statutes to be Harmonized.*—The doctrine that a special act should be construed as an exception to the general law is not to be invoked unless the two acts cannot be harmonized or reconciled in any other way. There are a number of instances in Virginia where general acts and special acts apply in the same county at the same time.

7. STATUTES—*Water Supply—Acts of 1922, Chapter 260, and Acts of 1926, Chapter 284, do not Conflict.*—There is no repugnance in the Acts of 1922, chapter 260, and the Acts of 1926, chapter 284, in regard to water supply for Arlington county. It was the intention of the legislature to provide two means of financing a publicly owned water system and to leave the choice of means to the people of the communities named.

8. WATER COMPANIES AND WATERWORKS—*Acts of 1926, Chapter 284—Constitutionality—Pledging Full Faith and Credit to the Entire County.*—Chapter 284 of the Acts of 1926, authorizing the installation of a publicly owned water supply system or systems in counties having a population of more than three hundred inhabitants per square mile, is not unconstitutional and void, in that it purports to authorize the issuance of county bonds and the pledge of the full faith and credit of the entire county for the purpose of installing and operating a water supply system for and on behalf of such magisterial districts only as shall vote in favor of said installation and operation and in favor of the issuance of county bonds therefor.

9. WATER COMPANIES AND WATERWORKS—*Acts of 1926, Chapter 284—Constitutionality—Municipal and County Purposes.*—Chapter 284 of the Acts of 1926, authorizing the installation of a publicly owned water supply system or systems in counties having a population of more than three hundred inhabitants per square mile, is not unconstitutional and void for the reason that it purports to authorize the issuance of county bonds and the pledge of the full faith and credit of the county for a purpose distinctly reserved to municipal corporations, as contemplated by the Constitution of 1902, especially section 127.

10. LEGISLATURE—*Power of the Legislature.*—The legislature possesses all

legislative power not prohibited by express terms, or by necessary implication, by the State Constitution or the Constitution of the United States.

11. POLICE POWER—*Inherent in the Legislature—Delegation.*—The police power of the State, the power to legislate in the interest of the public welfare, the public health and the public safety is inherent in the legislature, and it may delegate the full power or any limited part thereof to the cities or counties of the State as it sees fit.

12. COUNTIES—*Police Power—Power of the Legislature.*—The legislature has the right to grant to any county any functions looking to the advancement of the public welfare not prohibited by the State Constitution.

13. CONSTITUTIONAL LAW—*Power of Legislature—State Constitution a Limitation of Power.*—The State Constitution, unlike the Federal Constitution, is a limitation of power, and unless expressly limited by that instrument, the power of the legislature is unbridled.

14. COUNTIES—*Definition.*—A county is a political subdivision of the State for the purpose of civil administration of such powers as may be delegated by the State. It is for the legislature to determine the extent to which it will confer upon counties any powers to aid in the discharge of the obligation which the Constitution has imposed upon itself.

15. WATER COMPANIES AND WATERWORKS—*Acts of 1926, Chapter 284—Constitutionality—Taxing Property without Specifically Stating Tax—Case at Bar.*—Chapter 284 of the Acts of 1926, authorizing the installation of a publicly owned water supply system or systems in counties having a population of more than three hundred inhabitants per square mile, is not void in that it violates section 50 of the Constitution of 1902, in attempting to impose a tax upon all taxable property within said county, without specifically stating said tax. In the instant case, the tax being a local tax to support local bonds, it is not in any wise in contravention of section 50 of the Constitution of 1902.

16. CONSTITUTIONAL LAW—*Taxation—Section 50 of the Constitution Providing that Tax Laws Shall Specifically State the Tax—Local Taxes.*—Section 50 of the Constitution of 1902 applies only to the ordinary and general taxes for State purposes and not to local taxes for local purposes.

17. WATER COMPANIES AND WATERWORKS—*Acts of 1926, Chapter 284—Constitutionality—Due Process of Law.*—Chapter 284 of the Acts of 1926, authorizing the installation of a publicly owned water supply system or systems in counties having a population of more than three hundred inhabitants per square mile, is not unconstitutional and void in that it violates Article I, section 11, of the Constitution of 1902, relating to the taking of property without due process of law. The act does not provide primarily for the levying of a tax, but authorizes the board of supervisors to fix rates at which water

shall be supplied or furnished to customers. Becoming a customer is optional, as there is no provision in the act requiring anyone to take water from the system.

18. MUNICIPAL SECURITIES—*Waterworks Bonds—Acts of 1926, Chapter 284— Distinction between Complete Water System and Distributing System.*— In the instant case complainants contended that an election under chapter 284, Acts of 1926, was void and no bonds could be legally issued thereunder, because the bonds voted at the election were not for the purpose of installing and operating a complete water system in the county, but only for the purpose of installing and operating a distributing system in the county without any source of water supply.

*Held:* That there was no merit in the distinction drawn between a complete water system and a mere distributary system, as far as the record shows, which would affect the validity of the bonds. The act in question provided for a distributary system.

19. WATER COMPANIES AND WATERWORKS—*Acts of 1926, Chapter 284—Water System in Each District—Case at Bar.*—In the instant case complainants contended that an election held under the Acts of 1926, chapter 284, was invalid in that it failed to submit to the voters of each magisterial district the question of issuing bonds for a water system in that particular district, as the question submitted was the establishment and installation of a county water supply.

*Held:* That the Acts of 1926, chapter 284, plainly contemplated that the civil districts might act in concert, and there was no merit in this contention.

20. WATER COMPANIES AND WATERWORKS—*Acts of 1926, Chapter 284—Determination of Amount of Bonds to be Issued—Case at Bar.*—In the instant case it was contended that an election under chapter 284 of Acts of 1926 was void because the board of supervisors abrogated, prior to the election, the specific duty enjoined upon them, of determining after the election the amount of bonds to be issued, in that the board specifically determined prior to the election that the aggregate of bonds to be issued should not exceed a certain amount, and the fixed amount of the proceeds of the bonds to be spent in each district.

*Held:* That this omission, if it can be called one, does not affect the validity of the bonds. At most, it was advance information to the voters of the intention of the board which the subsequent conduct of the board must be considered to have ratified.

21. WATER COMPANIES AND WATERWORKS—*Acts of 1926, Chapter 284— Segregation of the Revenues Among Magisterial Districts—Case at Bar.*—In the instant case it was contended that a proposed bond issue under Acts of 1926, chapter 284, was void in that it violated the provisions of the act, in failing to provide for a segregation of the net revenues of said water supply system among the three magis-

terial districts; it being the intent of the board of supervisors to pool all of the net revenues from the entire system, thus subjecting the net revenues of a successfully operated system in one district to the payment of debts incurred by an unsuccessful operation of a system in a sister district.

*Held:* That under the broad powers vested in the board of supervisors by the act, there could be no objection to this plan of the board of supervisors.

22. WATER COMPANIES AND WATERWORKS—*Acts of 1926, Chapter 284—Notice of Election.*—Where the sheriff posted a copy of the court order authorizing an election on the issuance of bonds for a water supply on the twentieth day of May, 1926, at each and all of the voting precincts of the county, the requirement as to notice of the act of 1926, chapter 284, was complied with.

Appeal from a decree of the Circuit Court of Arlington county. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Ball & Douglas,* for the appellant.

*W. C. Gloth,* for the appellees.

CHICHESTER, J., delivered the opinion of the court.

This is an appeal from a final decree of the Circuit Court of Arlington county, entered October 21, 1926, in a chancery suit therein pending, in which the appellants here were complainants below, and the appellees were defendants below. The object of the suit was to enjoin the respondents from issuing $750,000 of bonds for the purpose of constructing and operating a public water supply in any of the magisterial districts of Arlington county, pursuant to the provisions of chapter 284 of the Acts of Assembly, 1926, under which act an election was held on June 15, 1926, submitting the question of the issuance of the bonds

to the voters of all the magisterial districts of the county. The election was carried in favor of the bond issue by large majorities in each district. The circuit court refused to grant the injunction and dismissed the suit at the cost of complainants.

The issues involved bring in question the validity of the bonds and were submitted to the court on the bill with exhibits and the answer.

The facts, which are undisputed, as gathered from these documents, as far as they are pertinent, are that at the 1922 session of the General Assembly of Virginia, an act was passed creating out of Arlington county a sanitary district to be known as Arlington sanitary district, and subdividing it into various zones and districts for the purpose, among other things, of providing a publicly owned water supply system or systems within the county and for the construction and financing of the same. Under the provisions of the act certain moneys were expended, the exact amount of which is not shown in the pleadings. The act is known as chapter 260 of the Acts of Assembly, 1922.

Subsequent thereto, at the 1926 session of the General Assembly, an act was passed known as chapter 284 of the Acts of Assembly, 1926, authorizing the board of supervisors of counties having a population of more than three hundred inhabitants per square mile to install a publicly owned water supply system or systems for the respective magisterial districts of such counties and providing for their construction and financing.

Under each of these acts the bonds were to be issued by the county on behalf of the respective districts, and the full faith and credit of the entire county was to be pledged as additional security for the bonds.

On the 15th day of June, 1926, an election was held in Jefferson, Arlington and Washington magisterial districts of the county of Arlington, being all of the magisterial districts of the county, under authority of the act known as chapter 284 of the Acts of Assembly, 1926, on the question whether the board of supervisors of the county should issue bonds aggregating the sum of $750,000 for the purpose of installing and constructing a water supply system in each of the districts, it being the expressed intention of the board to construct and operate one supply system for the entire county running into all three of the districts and connecting for its water supply with the District of Columbia, provision having been made by act of Congress approved April 14, 1926, for the latter connection. The amount of bonds to be issued for the three districts by the county were prorated as follows: Jefferson magisterial district, $150,000; Arlington magisterial district, $350,000; Washington magisterial district, $250,000.

The election was held upon order of the judge of the circuit court of the county, entered in vacation; on the 14th day of May, 1926, upon a petition of the entire membership of the board of supervisors, in accordance with the provisions of the act. As a notice of the election, the sheriff posted a copy of the court order authorizing it on the 20th day of May, 1926, at each and all of the voting precincts of the county.

Ballots for the election had printed thereon the words, "For Bond Issue" and "Against Bond Issue," as is provided by the act.

At the election there were cast for and against the bond issue the following ballots, to-wit: In Jefferson magisterial district, 420 ballots for, 58 ballots against; in Arlington magisterial district, 1,596 ballots

for, 172 ballots against; in Washington magisterial district, 578 ballots for, 42 ballots against. The report of the commissioners of election was filed in the clerk's office of the circuit court on the 17th day of June, 1926, giving in detail the vote by precincts. The judge of the circuit court, in vacation, entered an order on the 27th day of September, 1926, authorizing and directing the board of supervisors to issue the bonds and proceed to carry out the will of the voters as expressed at the election.

On the 28th of September, 1926, the board of supervisors offered the bonds for sale upon sealed proposals. At the time for opening the proposals two bids were offered, each of them being at par, aggregating $210,-000, the bonds being apportioned among the magisterial districts as follows, Arlington magisterial district, $98,000; Jefferson magisterial district, $42,000; and Washington magisterial district, $70,000. Two hundred thousand dollars of bonds were sold to the Virginia Trust Company of Richmond, Va., and ten thousand dollars to R. H. Phillips of Washington, D. C. The proposals were received after due public notice and advertisement, the notice being sent to a very great number of bond purchasing firms and bond houses and being given wide publicity in the local newspapers and the press of the city of Washington, D. C.

The complainants are residents, citizens and property owners of Arlington county, Virginia, E. L. Kirkpatrick and L. C. McNeman being residents and property owners of Arlington magisterial district; Charles E. Harrison and C. C. Donaldson being residents and property owners of Washington magisterial district; and Frances L. Caylor and Alice W. Semones being residents and property owners of Jefferson magisterial district, in Arlington county.

There are ten assignments of error, and while a number of them raise nice questions they are all without merit in our opinion. They will be stated and discussed in the order in which they appear in the record.

[1] 1. "The act known as chapter 260, of the Acts of Assembly, 1922, is a special act applying to Arlington county only and creating from the said county a sanitary zone or district known as Arlington sanitary district which comprised the entire area of said county. The purpose of said act, among other things, was to provide for the construction, installation and operation of a publicly owned water supply system or systems in the various zones and districts in said county to be laid out under the provisions of said act and to provide for a bond issue or bond issues to finance same. The act of 1926, known as chapter 284, under which said election was held is a general law applying to all counties in Virginia having a population of more than three hundred inhabitants per square mile as shown by the last United States census. These petitioners allege that the said act of 1922, is an exception to the general law and being a special act for Arlington county, is the only law now in effect under which bonds could be issued for the installation of a publicly owned water supply system. They therefore allege that all of the steps taken in calling and holding said election and attempting to issue any bonds under authority of the act of 1926, known as chapter 284, are void as the said chapter 284 is not applicable within the said county."

Briefly stated, the contention is that the act of 1926 is a general law and is not applicable to Arlington county because there is a prior special act known as the Arlington county act of 1922, covering the same

matter, in force in that county. It is true the two acts have the same object, in part, but they provide entirely different methods of attaining that object, and under the usual rules of construing statutes and the history of this and other legislation relating to Arlington county it is manifest that the legislature intended that both acts should be in force in the county, giving the county a choice of means to attain the end sought.

The contention of appellants as to this assignment and others is so well and fully refuted by the argument in the brief of appellees that, without quoting, we have taken the liberty of following it closely. The purport of that argument is that, under the Arlington sanitary act (act, 1922), the sanitary districts provided for in Arlington county are directed to be laid off without regard to either the boundaries or areas of the magisterial districts. The construction of the proposed water system was to be financed by bond issues on behalf of the sanitary zones and districts on which the full faith and credit of the county of Arlington was to be pledged, but the actual funds for the payment of the bonds were to be raised in the respective zones and districts by general taxation on all property subject to taxation there. The only provision in the Arlington sanitary act which is mandatory is that the board of supervisors shall lay out and define the boundaries of the districts and zones. No bonds could be issued thereunder until a petition is filed either by the board of supervisors or by a certain number of citizens, asking the circuit court to call an election, and unless and until a majority of the voters of the respective zones and districts voted in favor of issuing bonds. We have thus set up under the Arlington sanitary act a set of districts and zones laid out without regard to the boundaries or areas

of the magisterial districts, school districts, or any subdivision of the county theretofore authorized either by the Constitution or the statute law.

In contrast to the sanitary act, the act of 1926, known as chapter 284, under which the bonds in the instant case are authorized and are proposed to be issued, provides for a county bond issue on behalf of the magisterial districts, the primary source of revenue for the redemption of the bonds to be the net revenue arising from the operation of the water system and the full faith and credit of the county being pledged as an additional guaranty or surety. It differs from a sanitary act in two very material particulars. First, it recognizes the magisterial districts, which are constitutional subdivisions of the county, and, second, it places the primary burden for the financing of the water system upon the people who use the water.

[2] Both of the acts grew out of the same necessity, to-wit, an adequate water supply, and when this need is fully supplied under either act it precludes the possibility of the other act ever being called into use.

It is the contention of the appellees that both acts are and were intended to be applicable to the county of Arlington.

The appellants contend that the act of 1926 is a general act and is not at this time applicable to Arlington county.

[3] The act is general and applies not only to Arlington county but to every other county which is or may come within its terms. No doubt the primary reason for its passage was to supply the present needs of Arlington county.

There are a number of reasons which indicate this intention. First: This court will take judicial notice of the fact that Arlington county is the only county

in Virginia which has a population of more than 300 per square mile (*Ex parte Settle*, 114 Va. 715, 77 S. E. 496), and the act of 1926 applies only to counties in Virginia with a population of more than 300 to the square mile. The trial justice act (chapter 347, Acts 1912), was general, but was made to apply only to counties with a population of 300 to the square mile, and this court in *Ex parte Settle*, *supra*, said that Arlington county was the only county to which the act applied. Secondly, and as supplemental to the above indications of the legislative intent, and with this fact of population in mind, the Arlington sanitary act was amended at the 1926 session of the General Assembly (Acts 1926, c. 463). At the same session, and approved on the same day, the 1926 act, known as chapter 284, was passed. Chapter 284 of the Acts of 1926, was an emergency act, and became effective upon signing by the Governor. The amendment to the sanitary act was not an emergency act. Thirdly, section 9 of the act of 1926 provides that the board of supervisors shall have power and authority to contract with the commissioners of the District of Columbia, or with the proper authorities of the United States, or any department or agency thereof, with regard to connection with any water supply system owned or operated by the United States or the District of Columbia. It will be noted that Arlington county is the only county bordering on the District of Columbia in reach of the latter's water supply, and it will be further noted that it is the only county in Virginia with which the District of Columbia or any agency of the United States has been authorized by Congress to contract with reference to a water supply. These two facts show definitely and conclusively that Arlington county was intended to be included in the provisions of the act of 1926.

[4] It is a well settled principle of law that where two statutes are in apparent conflict they should be so construed, if reasonably possible, so as to allow both to stand and to give force and effect to each. 36 Cyc., 1146, citing many cases.

[5] "The object of all interpretation and construction of statutes is to ascertain and carry out the intention of the lawmakers, and when the intention is ascertained it must always govern." *Jones* v. *Rhea*, 130 Va. 345, 107 S. E. 814.

[6] The doctrine that a special act should be construed as an exception to the general law is not to be invoked unless the two acts cannot be harmonized or reconciled in any other way. There are a number of instances in Virginia where general acts and special acts apply in the same county at the same time. See *Ferguson* v. *Board of Supervisors*, 133 Va. 561, 113 S. E. 860.

[7] We think, therefore, there is no repugnance in the acts here being considered and that it was the intention of the legislature to provide two means of financing a publicly owned water system and to leave the choice of means to the people of the communities named.

[8] 2. "Chapter 284 of the Acts of 1926 is unconstitutional and void, in that it purports to authorize the issuance of county bonds and the pledge of the full faith and credit of the entire county for the purpose of installing and operating a water supply system for and on behalf of such magisterial districts only as shall vote in favor of said installation and operation and in favor of the issuance of county bonds therefor; such purpose not being a county purpose nor for the benefit of the entire county, but being solely a purpose for the benefit of one or more magisterial districts which may vote for said bonds."

This contention is disposed of by the decision in *Moss* v. *Tazewell*, 112 Va. 878, 72 S. E. 945.

[9] 3. "Chapter 284 of the Acts of 1926 is unconstitutional and void for the reason that it purports to authorize the issuance of county bonds and the pledge of the full faith and credit of the county for a purpose distinctly reserved to municipal corporations, as contemplated by the Constitution of Virginia, especially section 127, the same not being a purpose which is a proper function of a county as a mere political subdivision of the State. It is alleged that the said act is, therefore, unconstitutional and void in that it attempts to transcend the constitutional functions and powers of a county or magisterial district."

[10, 11] Section 127 of the Constitution of Virginia has no application to a situation such as we are dealing with here. Its purpose is to limit the extent to which cities and towns shall issue bonds. The legislature possesses all legislative power not prohibited by express terms, or by necessary implications by the State Constitution or the Constitution of the United States. *Albemarle Oil Co.* v. *Morris*, 138 Va. 1, 121 S. E. 60; *Moss* v. *Tazewell, supra.* The police power of the State, the power to legislate in the interest of the public welfare, the public health and the public safety is inherent in the legislature, and it may delegate the full power or any limited part thereof to the cities or counties of the State as it sees fit. *R. F. & P. R. Co.* v. *City of Richmond*, 145 Va. 225, 133 S. E. 800; *Folglaise* v. *Commonwealth*, 114 Va. 850; *Bowman* v. *State Entomologist*, 128 Va. 351, 105 S. E. 141, 12 A. L. R. 1121; *Miller* v. *State Entomologist, post,* page 175, 135 S. E. 813, handed down at this term.

[12, 13] From these decisions it is plain that the

legislature has the right to grant to any county any functions looking to the advancement of the public welfare not prohibited by the State Constitution. The State Constitution, unlike the Federal Constitution, is a limitation of power, and unless expressly limited by that instrument, the power of the legislature is unbridled.

[14] It has been held by authorities that a county is a political subdivision of the State for the purpose of civil administration of such powers as may be delegated by the State.

Thus, in *City of Monico* v. *Los Angeles County* (Calif.), 115 Pac. 945, 15 Cal. App. 710, the Supreme Court of California held that "a municipal corporation is but a branch of the State Government, and is established for the purpose of aiding the legislature in making provision for the wants and welfare of the public within the territory for which it is organized, and it is for the legislature to determine the extent to which it will confer upon such corporation any power to aid in the discharge of the obligation which the Constitution has imposed upon itself. This is true of counties and their government."

See also, *Kampe* v. *Bynum*, 158 Ala. 311, 48 So. 55; *Strawberry Hill Land Co.* v. *Starbuck*, 124 Va. 71, 97 S. E. 362; *Breckenbridge* v. *County School Board, ante,* page 1, 135 S. E. 693, decided at the present term.

[15] 4. "The said chapter 283 of the Acts of 1926 is void in that it violates section 50 of the Constitution of Virginia, in attempting to impose a tax upon all taxable property within said county, without specifically stating said tax, it being the contention of these petitioners that the pledging of the full faith and credit of the entire county for the payment of said bonds necessarily imposes a tax for the satisfactory fulfilment of said pledge."

[16] Section 50 of the Constitution of Virginia, relied upon by the appellants, applies only to the ordinary and general taxes for State purposes and not to local taxes for local purposes.

In *Powers* v. *Richmond*, 122 Va. 328, 94 S. E. 803, this appears: "The Constitutions of several States provide that every law imposing a tax shall state distinctly the object of the same to which only it shall be applied. It is held, however, that this applies only to the ordinary and general taxes for State purposes and such as are imposed generally on all the taxable property in the State, and not to local taxes for local purposes, or to special taxes on peculiar kinds of property, or such as are in the nature of a license or occupation fee; nor does the provision apply to laws which merely provide or regulate the machinery for assessing and collecting the tax.

"To uphold the position of counsel for appellants would be to disrupt a system of taxation which has always been in force in Virginia, and, as we believe, in most of the States of the Union. From the earliest date, the local authorities in the counties and cities of the Commonwealth have, by the General Assembly, been authorized to impose local taxes and fix the rates thereof."

In the instant case, the tax being a local tax to support local bonds, it is not in any wise in contravention of section 50 of the Constitution.

[17] 5. "The said chapter 284 of the Acts of 1926 is unconstitutional and void in that it violates Article I, section 11, of the Constitution of Virginia, relating to the taking of property without due process of law."

There is no merit in this assignment. The act does not provide primarily for the levying of a tax, but authorizes the board of supervisors to fix rates at which

water shall be supplied or furnished to customers, and the net revenues derived from this source are to be set aside by the board to pay interest on the bonds and to create a sinking fund.

Becoming a customer is optional with the citizens of the county, or the districts thereof, as there is no provision in the act requiring anyone to take water from the system after it has been constructed.

[18] 6. "These petitioners allege that said election was void and that no bonds can legally be issued pursuant thereto because the said bonds voted at the said election are not for the purpose of installing and operating a complete water system in said county, or in any magisterial district thereof, but only for the purpose of installing and operating a distributing system in said county without any source of water supply. The bond proponents at said election proposed to establish a distributing system within said county and connect same up with the District of Columbia water supply system, under an act of Congress approved April 14, 1926. The said act makes no provision for a connection to supply water to Arlington county, but merely for the delivery of water to the Arlington sanitary district created by chapter 260 of the Acts of Assembly of Virginia, 1922, above referred to. It would be a void and vain thing to create a distributing system without any provision for the main water supply."

There is no merit in the distinction here drawn between a complete water system and a mere distributary system, as far as the record shows, which would affect the validity of the bonds. It is true that the water supply, as indicated by the petition for the election and elsewhere in the record, will be obtained from the reservoir which supplies the Dis-

trict of Columbia, by contract with the Secretary of War, made pursuant to an act of Congress authorizing the Secretary of War to permit delivery of water from the Washington aqueduct pumping station to the Arlington county sanitary board. The Virginia act of 1926 (Acts 1926, c. 284), as above stated, provides for this very thing.

It is a mere quibble to say that the act of Congress only permits a contract with the Arlington county sanitary board and not with Arlington county. Arlington county and Arlington sanitary board are used interchangeably in the act, and it names the board of supervisors as the party to make the contract with. Both Virginia acts authorize a contract with the War Department of the United States Government for the water supply. In its last analysis, the authority is in the board of supervisors of Arlington county and the War Department. In view of this, while the character of the construction of the system and the source of water supply may, by some possibility, affect the desirability of the bonds, they do not affect the validity thereof.

[19] 7. "The said election was invalid in that it failed to submit to the voters of each magisterial district the question of issuing bonds for a water system in that particular district. The question submitted to the voters was the establishment and installation of a county water supply system and the vote taken was not upon the question of a district system but an entire water supply system for the said county which is not contemplated by the said chapter 284 of the Acts of 1926, and which deprives the voters of the respective magisterial districts of the privilege of voting for or against the issuance of said bonds for their respective districts. Under the proposition as

actually voted upon, it would have been possible for one district to have voted for the bonds and two districts to have voted against them, in which event the voters in one magisterial district, instead of voting for a small system to take care of the needs of their own district would be voting a large system for the entire county, contrary to the will of the other two districts."

In addition to what has been said under assignment No. 2, it is only necessary to add that the act of 1925 plainly contemplates that the several districts may act in concert. The very first clause declares: "Be it enacted by the General Assembly of Virginia, That bonds may be issued by any county of this State having more than three hundred inhabitants per square mile as shown by the last preceding United States census, for the purpose of constructing and operating a public water supply system in any magisterial district or districts in the said county, upon the conditions hereinafter provided."

[20] 8. "The said election was void because the said board of supervisors abrogated, prior to the election, the specific duty enjoined upon said board by chapter 284, of determining after the election the amount of bonds to be issued, in that the said board specifically determined prior to said election that the aggregate of bonds to be issued would not exceed $750,000, and it specifically determined prior to the said election a certain fixed amount of the proceeds of said bonds to be spent in each of said districts."

This omission, if it can be called one, does not affect the validity of the bonds. At most, it was advance information to the voters of the intention of the board which the subsequent conduct of the board must be considered to have ratified. This maximum amount,

only $210,000 of which is proposed to be issued at once, does not exceed fifteen per centum of the total taxable values of the county (as prohibited by the act), and it is not objectionable for this reason. The board have authority, under the act, to determine the amount of bonds to be issued, from time to time, until the system is completed, and it may not be necessary ever to issue the total of $750,000.

[21] 9. "The said proposed bond issue is void in that it violates provisions of chapter 284, in failing to provide for a segregation of the net revenues of said water supply system among the three magisterial districts; it being the intent of the said board of supervisors to pool all of the net revenues from the entire system, thus subjecting the net revenues of a successfully operated system in one district to the payment of debts incurred by an unsuccessful operation of a system in a sister district."

The intention of the board of supervisors as to the handling of revenue to be derived from the operation of the system does not appear to be in conflict with any provision of the act touching this question. Section 7 of the act declares that "the board of supervisors shall maintain and operate for and on behalf of the district or districts a public water supply system in accordance with such rules and regulations as may be adopted by the said board, and to fix the rates at which water is to be supplied or furnished to consumers." All the districts of Arlington county are to be supplied together and jointly as the board is authorized by the statute to supply them, and under the broad powers vested in the board we see no objection to the plan—at least, such as are urged are purely speculative.

[22] 10. "The said election is void and of no effect

because proper notice thereof was not given as required by law."

The facts touching the posting of notice are mentioned in the statement of the case, and an examination of the act will disclose the fact that all its requirements in this respect were fully complied with.

For the reasons stated, we are of opinion that the trial court properly refused to grant the injunction prayed for, and that the decree complained of should be affirmed.

*Affirmed.*