# CIRCUIT COURT OF WARREN COUNTY

Warren County Residents

v.

Industrial Development Authority
of the Town of Front Royal
and Warren County

November 2, 2000

Case No. (Law) 99-310

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on October 25, 2000, on the Defendant's Demurrer to the Petition for an Audit and Motion for Summary Judgment on the Petitioners' claim that the Industrial Development Authority's acting as a general contractor for the construction of facilities for a new commercial enterprise in Warren County was an *ultra vires* act. Upon consideration, the Court has decided to sustain the demurrer, because the Authority is a political subdivision of the Commonwealth and is not subject to the audit statute for local governments, and to grant the Authority's Motion for Summary Judgment, because the Authority did not exceed its lawful powers.

## I. *Statement of Material Facts*

The following material facts are not in dispute.

The Industrial Development Authority of the Town of Front Royal and the County of Warren (hereafter the "Authority") was created by the Town of Front Royal and Warren County pursuant to the Virginia Industrial Development and Revenue Bond Act. Virginia Code § 15.2-4900 *et seq*. In 1995 and 1997, the Authority entered into contracts with three corporations

which were planning to construct new commercial facilities in Warren County. Defendant's Exhibits C, D, and E. In each instance, the parties to the Agreement were the private corporation, the Authority, the Town, and the County, and the Agreements share certain common features:

a. The Authority conveyed land which was in a Virginia enterprise zone to the private corporation;

b. Each of the private corporations were constructing a new commercial facility on the property being acquired from the Authority;

c. The enterprise was eligible for financial assistance from the Governor's Opportunity Fund;

d. The Authority was to "serve as the general contractor for the project to purchase and install all construction materials and equipment necessary to equip the Project on a sales and use tax exempt basis. ..." Ferguson Agreement, Exhibit C, p. 13; and

e. In each agreement, a condition precedent to the Authority's service as general contractor was the corporation's obtaining a letter ruling from the Virginia Department of Taxation that the proposed arrangement would be exempt from sales and use taxes.

In each case, the Virginia Department of Taxation issued a letter ruling opining that the proposed format would be exempt. *See, e.g.* Defendant's Exhibit B, the Family Dollar Letter Ruling. The three projects were completed, and no sales or use tax was assessed by the Virginia Department of Taxation on any of the three projects.

In 1999, the General Assembly amended Virginia Code § 58.1-609.1 to provide that the governmental exemption for sales and use tax "shall not apply to tangible personal property which is acquired by the Commonwealth or any of its political subdivisions and then transferred to private businesses for their use in a facility or real property improvement to be used by a private entity or for non-governmental purposes. ..."

The Petitioners are residents of Warren County who have filed the present Petition for an audit of the Authority's records pursuant to Virginia Code § 15.2-2512 to determine the extent of alleged lost sales and use taxes and seeking the judgment of this Court that the Authority's general contractor arrangement was an *ultra vires* act.

## II. *Conclusions of Law*

### A. *Summary Judgment*

Summary Judgment is appropriate if there is no material fact genuinely in dispute. Supreme Court Rule 3:18; *Carson v. LeBlanc*, 245 Va. 135, 139, 427 S.E.2d 189 (1993).

### B. *Demurrer*

In considering a demurrer, the Court must apply "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991), quoting *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988). "Upon demurrer, the test of the sufficiency of the motion for judgement is whether it states the essential elements of a cause of action, not whether evidence might be adduced to defeat it." *Lyons v. Grether*, 218 Va. 630, 638, 239 S.E.2d 103 (1977). "To justify the Court in sustaining a demurrer to a complaint, the ground of the demurrer must be a short, dry point of law upon which it is clear that the complaint will be dismissed ... at the hearing." 16 M.J., *Demurrer*, § 48.

### C. *Industrial Development Authorities are Political Subdivisions of the State*

An industrial development authority is *"a political subdivision of the Commonwealth* with such public and corporate powers" as are set forth in Chapter 49 of title 15.2 of the Code of Virginia. Virginia Code Section 15.2-4903. (Emphasis added.) "A municipal authority created under a municipal authorities act has been regarded as a corporate agency of the state, and not a creature, agent or representative of the municipality organizing it." 1 McQuillin, *Municipal Corporations*, § 2.29a (3d ed.). In *Chesapeake Devel. Auth. v. Suthers*, 208 Va. 51, 56-57, 155 S.E.2d 326 (1967), the Supreme Court held that:

> [An industrial development] authority is not the alter ego of the city or county, nor is it a "device or pretense" created to evade constitutional limitations. An industrial development authority is a separate and distinct legal entity established to perform the public purpose designated by the legislature. It is independent of the city [or

county which created it] in its operations, its incurment of debt, and its ownership of property.

An industrial development authority is a political subdivision of the Commonwealth separate from a county or city. *Mayor v. Industrial Devel. Auth.*, 221 Va. 865, 871, 275 S.E.2d 888 (1981).

Virginia is awash in special districts and authorities like the industrial development authority. As noted in Makielski, *The Special District Problem in Virginia*, 55 Va. Law Rev. 1182, 1183 (1969), in 1969 there were "300 'special districts' in Virginia, and new ones are added each month. For the fiscal year 1962, special districts accounted for approximately ten percent of all local government expenses. ..." Of the 300 special districts at that time, twenty-one were industrial development authorities. *Id.* at 1197. As Professor Makielski noted in his law review article:

There is no completely satisfactory definition of the term special district, and the absence of a good working definition is indicative of its amorphous nature. Special districts have been variously described as "quasi-governmental units," "single-purpose" governmental units, and "legally-definable units" of government. ...

Special Districts in Virginia can primarily be identified by the following characteristics:

*First.* Special Districts are established by legislation as separate organized units on state, regional, or local level with their own governing bodies and administrative procedures. *They are not subordinate to either cities or counties.*

*Second.* Special districts are financially and legally responsible for their own acts. ...

*Third.* Special districts resemble both private corporations and governmental bodies. ... While they are normally considered to be governmental agencies, *they often engage in activities usually thought to be more appropriate for private enterprise.* The substantive powers of special districts, however, are consistently limited to reasonably well-defined functions, and other grants of power are usually ancillary to the district's primary authority.

*Fourth.* Although the jurisdictions of cities and counties are mutually exclusive and town boundaries are clearly delineated, the jurisdiction of a special district may include all or part of the territory of other governmental units. ...

*Fifth.* Unlike the general purpose political subdivisions [cities, counties, and towns] which are governed by an extensive body of

municipal corporation law, no clear precedents define the rights, duties, and functions of special districts.

*Id.* at 1184-85 (emphasis added).

D. *An Authority Has Those Powers Conferred Upon It by the Enabling Statutes Which May be Exercised to Achieve Its Statutory Purposes*

The General Assembly determines the extent to which it will confer upon political subdivisions of the Commonwealth powers to aid in the discharge of the obligations which the Constitution has imposed upon the Commonwealth. *Kirkpatrick v. Board of Supervisors*, 146 Va. 113, 127, 136 S.E. 186 (1926). The Industrial Development and Revenue Bond Act is a lawful delegation of legislative authority. *Chesapeake Devel. Auth. v. Suthers*, 208 Va. 51, 54, 155 S.E.2d 326 (1967). An industrial development authority is a body politic and corporate, whose public and corporate powers are legislative powers, and the exercise of those powers is a legislative function. *I.D.A. v. La France*, 216 Va. 277, 281, 217 S.E.2d 877 (1975).

Virginia Code § 15.2-4901 sets forth in detail the purposes for which industrial development authorities are created, and the first paragraph of that extensive statement of statutory purpose provides that:

It is the intent of the legislature by the passage of this chapter to authorize the creation of industrial development authorities by the localities in this Commonwealth *so that such authorities may acquire,* own, lease, *and dispose of properties* and make loans to the end that such authorities may be able *to promote industry and develop trade by inducing manufacturing, industrial,* governmental, nonprofit, *and commercial enterprises* and institutions of higher education *to locate in or remain in this Commonwealth* and further the use of its agricultural products and natural resources, *and to vest such authorities with all powers that may be necessary to enable them to accomplish such purposes, which powers shall be exercised for the benefit of the inhabitants of the Commonwealth, either through the increase of their commerce,* or through the promotion of their safety, health, welfare, convenience, or prosperity. Such authority shall not itself be authorized to operate any such manufacturing, industrial, nonprofit, or commercial enterprise or any facility of an institution of higher education. ...

*This chapter shall be liberally construed in conformity with these intentions.*

(Emphasis added.)

The petitioners do not contest the fact that the three contracts in question promoted the purposes of the Industrial Development and Revenue Bond Act in assisting new industries to locate in Warren County.

To achieve the statutory objectives, the Authority is given a broad range of powers. Virginia Code § 15.2-4905 provides in pertinent part:

> The authority shall have the following powers together with all powers incidental thereto or necessary for the performance of those hereinafter stated. ...
> 3. To enter into contracts. ...
> 10. To exercise all powers expressly given the authority by the governing body of the locality which established the authority. ...

These statutes are clear and unambiguous. If a statute is clear and unambiguous, a court will give the statute its plain meaning. *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). Where the statute is clear, the court may not "resort to legislative history and extrinsic facts" to interpret words whose meaning is clear; it must "take the words as written" and give them their plain meaning. *Id.* at 321. The Virginia Supreme Court is very reluctant to read requirements or restrictions into statutes which are not expressed. *See Makarov v. Commonwealth*, 217 Va. 381, 228 S.E.2d 573 (1971). "For this Court to place any limitation on the clear and comprehensive language of the statute, or to create an exception where none exists under the guise of statutory construction, would be to defeat the purpose of the enactment and to engage in judicial legislation." *Town of Crewe v. Marler*, 228 Va. 109, 114, 319 S.E.2d 748 (1984).

The Authority is expressly given the power to enter contracts to achieve its statutory purposes. The Town of Front Royal and the County of Warren signed the agreements with the industrial enterprises and the Authority thereby expressly authorizing the Authority to act in the general contractor role. Defendant's Exhibits C, D, and E. The Attorney General's Opinion, 1999 Attorney General's Op. 67, relied upon by the Petitioners, did not consider the effect of Virginia Code § 15.2-4905.10 and the fact that the town and the county has expressly authorized the transaction.

In 1999, the General Assembly amended Virginia Code § 58.1-609.1(4) to state that the governmental exemption for sales and use tax "shall not apply to tangible personal property which is acquired by the Commonwealth or any of its political subdivisions and then transferred to private businesses for their use in a facility or real property improvement to be used by a private entity or

for non-governmental purposes. ..." It should be noted that the General Assembly did not amend Virginia Code § 15.2-4905 to change the law regarding the powers of industrial development authorities to prohibit industrial development authorities from acting as general contractors. Rather, the General Assembly only amended the law to prohibit tax exemptions when industrial development authorities act as general contractors. The fact that such arrangements are now disallowed does not alter the fact that until the tax statutes were amended, industrial development authorities had the plenary power under the enabling statutes to enter transactions like the ones at issue in this case to achieve the statutory purposes of the Industrial Development Authority Act.

## E. *There Is No Provision for the Audit of the Authority*

The statutory authority upon which the Petition is based is Virginia Code § 15.2-2512,[1] which provides that a court may, when the public interest will be promoted, order an audit or examination of the whole or any part of the financial transactions of "any county officer, board, or commission of the county," does not apply to the Authority. An industrial development authority is not a "county officer, board, or commission of the county." Therefore, this statute has no application to the Authority.

## F. *Duty to Ascertain and Collect Taxes is the Responsibility of the Department of Taxation and County Treasurer*

An industrial development authority is not liable for sales and use taxes, Va. Code § 58.1-609.1(4), except in the limited circumstance created by the 1999 amendment to paragraph 4 of that statute. If any sales and use tax were owed, it would be owed by the businesses who did not pay the tax. There is no responsibility on the part of an industrial development authority to pay or repay sales and use taxes under the circumstances of this case.

---

[1] Virginia Code § 15.2-2512 provides that: "Whenever, upon a petition filed in the circuit court for any county by at least fifty residents of the county, it is believed by the judge of the court that the public interests will be promoted by an audit or examination of the whole or any part of the financial transactions of any county officer, board, or commission of the county, the judge may appoint one or more certified public accountants to make and report to the court the result of such audit or examination. The court shall fix the compensation to be paid by the board of supervisors to the accountants."

### III. *Decision*

For the forgoing reasons, it is adjudged and ordered that:

1. The Industrial Development Authority of the Town of Front Royal and the County of Warren did not exceed its lawful powers under the circumstances of this case.

2. The Petitioners are not entitled to an audit of the Industrial Development Authority pursuant to Virginia Code § 15.2-2512.

3. Defendant's Demurrer and Motion for Summary Judgment are granted, and this case is dismissed with prejudice.

This is a final order, and the Clerk is directed to place this file among the ended cases.